**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-03001-REB-CBS

DP PRECISE, LLC, a Michigan limited liability company,

    Plaintiff,

v.

THE PHOENIX INSURANCE COMPANY,

    Defendant.

---

## ORDER GRANTING MOTION FOR CHANGE OF VENUE

---

**Blackburn, J.**

The matter before me is **Defendant The Phoenix Insurance Company's Motion for Change of Venue, and in the Alternative, Motion for Determination of Choice of Law and for Partial Dismissal** [#14],[1] filed January 10, 2013. I grant the motion insofar as it requests a change of venue.

### I. JURISDICTION

I putatively have subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

### II. STANDARD OF REVIEW

Section 1404(a) contemplates that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The

---

[1] "[#14]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

district court is vested with considerable discretion in determining whether transfer is appropriate. ***Chrysler Credit Corp. v. Country Chrysler, Inc.***, 928 F.2d 1509, 1515 (10th Cir. 1991). Factors that bear on the analysis include:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id*. at 1516 (quoting ***Texas Gulf Sulphur Co. v. Ritter***, 371 F.2d 145, 147 (10th Cir. 1967)). The movant bears the burden of establishing that the existing forum is inconvenient. *Id*. at 1515. This is a heavy burden, ***Texas Gulf Sulphur Co.***, 371 F.2d at 148, "'and unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed,'" ***Scheidt v. Klein***, 956 F.2d 963, 965 (10th Cir. 1992); ***see also Cargill Inc. v. Prudential Insurance Co. of America***, 920 F.Supp. 144, 146 (D. Colo. 1996).

### III. ANALYSIS

This is a suit for alleged breach of insurance contract and bad faith. Plaintiff is a Michigan limited liability company with its principal place of business in Denver, Colorado. In June, 2010, plaintiff purchased six multi-unit residential apartment buildings in Detroit, Michigan, which it intended to rehabilitate and rent. On or about December 26, 2010, vandals broke into two of the buildings, wrecking property and

stealing copper piping. The buildings were rendered uninhabitable by the then-current residents.

The properties were covered by a commercial general liability insurance policy. Plaintiff filed claims under the policy for losses associated with the damage to the properties, but those claims ultimately were denied.[2] This lawsuit ensued. Defendant now seeks a change of venue, arguing that the Eastern District of Michigan is a more convenient forum for the resolution of this suit. As I concur, I do not consider defendant's alternative argument regarding choice of law.

In determining whether transfer pursuant to section 1404(a) is appropriate, my discretion is bounded first by whether the proposed transferee district is one in which the action "might have been brought." The proposed transferee district thus must be one in which the district court would have had original federal jurisdiction over the action. **See Continental Grain Co. v. The FBL-585**, 364 U.S. 19, 21-22, 80 S.Ct. 1470, 1472, 4 L.Ed.2d 1540 (1960); **Wedelstedt v. Law Offices of Goldstein, Goldstein and Hilley**, 2006 WL 241136 at *4-5 (D. Colo. Jan. 31, 2006). That determination, in turn, is governed by the federal venue statute, which provides:

> A civil action may be brought in –
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

---

[2] The claims for vandalism and theft were denied under a limitation of the policy precluding payment for such damages if the subject property had been "vacant," as that term was defined by the policy, for more than 60 consecutive days prior to the date of the loss. Plaintiff's claim for loss of business income was denied for failure to file timely within the deadlines required by the policy.

3

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Considering section 1391(b)(2) in particular, "[t]he court must decide whether the forum activities played a substantial role in the circumstances leading up to the plaintiff's claim. The forum activities must have been events significant to the plaintiff's claims." **Wempe v. Sunrise Medical HHG, Inc.**, 61 F.Supp.2d 1165, 1173 (D. Kan. 1999) (citations and internal quotation marks omitted).

The properties implicated by this lawsuit are located in Detroit, Michigan. The alleged vandalism and theft that form the basis of plaintiff's claims under the policy and for breach of the insurance contract occurred in Detroit, Michigan. Even granting that some part of defendant's actions in investigating the claim implicate or occurred in Colorado, as plaintiff suggests, determination of proper venue does not require the court to choose the best venue or determine which forum has the most, or most significant, contacts with plaintiff's claims. **KEBD Enterprises, LLC v. Hider** 2009 WL 1504748 at *6 (D. Colo. May 26, 2009). Rather, the question is merely whether significant events underlying the claims in suit occurred in the forum. *Id.* That standard clearly is met here.

Thus, I find and conclude that this suit could have been filed in the Eastern District of Michigan. I therefore turn to the question whether transfer to that district is

warranted.

I acknowledge that, as a general rule, "unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." ***Scheidt v. Klein***, 956 F.2d 963, 965 (10th Cir. 1992) (citation and internal quotation marks omitted). Conversely, however, courts "accord little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." ***Employers Mutual Casualty Co. v. Bartile Roofs, Inc.***, 618 F.3d 1153, 1168 (10th Cir. 2010) (citation and internal quotation marks omitted).

This exception is clearly implicated in this case. Despite plaintiff's arguments to the contrary, the fact remains that the critical mass of this lawsuit implicates Michigan. The fact that plaintiff's principal place of business is located in Colorado and that defendant was required to interact with plaintiff in investigating and processing its claims does not convince me that Colorado has the type of significant connection to the gravamen of this lawsuit that would justify the usual deference to plaintiff's choice of forum. ***See Pinnacle Realty Management Co. v. National Union Fire Insurance Co. of Pittsburgh, PA***, 2007 WL 1970275 at *3 (D. Colo. July 3, 2007) (execution of policy paperwork and ministerial communications conducted in Colorado did not create significant relationship for conflict of laws purposes). This factor therefore does not weigh in favor of retaining the case in this court.

Instead, the considerations that weigh most heavily in the analysis – both in general and in this case particularly – are the convenience of witnesses and the ability to compel the testimony of unwilling witnesses. ***See Cook v. Atchison, Topeka &***

*Santa Fe Railway Co.*, 816 F.Supp. 667, 669 (D. Kan. 1993). Defendant has named no fewer than 46 witnesses – including tenants, property managers, contractors, and maintenance workers – who it represents have information relevant to the claims in suit. All are located in Michigan. Defendant adequately describes the type of testimony these witnesses are likely to have, and its relevance is pellucid from the nature of the claims asserted here.

Of the few potential witnesses who are located outside of Michigan, most are employees of either plaintiff or defendant, and therefore subject to compulsory process regardless where trial is held. *See Garza v. Pep Boys-Manny, Moe & Jack of Delaware, Inc.*, 2010 WL 2108486 at \*1 n.2 (D. Colo. May 24, 2010) (citing *Gardipee v. Petroleum Helicopters, Inc.*, 49 F.Supp.2d 925, 929 (E.D. Tex.1999)). Although plaintiff argues that modern technology allows for depositions to be conducted via video conference and other remote means, such arrangements do little to address the inherent unfairness of being required to present a significant portion of the testimony at trial via deposition, videotaped or otherwise. *See Cook*, 816 F.Supp. at 119.

Thus, although none of the remaining factors weighs predominantly in favor of

transfer,[3] I find that this consideration bears so heavily on the propriety of venue in this case that it alone warrants transfer of this case to a Michigan court.  Defendant's motion therefore will be granted, and the case transferred to the Eastern District of Michigan.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant The Phoenix Insurance Company's Motion for Change of Venue, and in the Alternative, Motion for Determination of Choice of Law and for Partial Dismissal** [#14], filed January 10, 2013, is **GRANTED** insofar as it requests a

---

[3] Assuming *arguendo* that Michigan law applies to the policy, as defendant argues, the fact remains that the legal issues involved in interpreting insurance contracts are "relatively simple" and well within the ken of federal jurists.  **See** *Employers Mutual Casualty*, 618 F.3d at 1169-70.  Moreover, there is no outcome determinative conflict between Michigan and Colorado law in this respect.  **See** *Security Service Federal Credit Union v. First American Mortgage Funding, LLC*, 861 F.Supp.2d 1256, 1264 (D. Colo. 2012).  Although defendant maintains, correctly, that there is no cause of action under Michigan law for bad faith breach of insurance contract, Michigan *does* recognize a cause of action sounding in tort for violation of the implied duty of good faith in investigating and paying insurance claims.  **See** *No Limit Clothing, Inc. v. Allstate Insurance Co.*, 2011 WL 96869 at *3 (E.D. Mich. Jan. 12, 2011). This is not at all unlike the tort of bad faith breach of insurance contract under Colorado law, which exists independently of the contract, *see Flickinger v. Ninth District Production Credit Association*, 824 P.2d 19, 24 (Colo. App. 1991), and is based on the insurer's conduct in handling the claim, **Emenyonu v. State Farm Fire & Casualty Co.**, 885 P.2d 320, 324 (Colo. App. 1994).

Nor is the comparative congestion of the dockets of the District of Colorado and the Eastern District of Michigan particularly compelling. "When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." ***Employers Mutual Casualty***, 618 F.3d at 1169.  In comparing these relevant statistics, the time from filing to disposition for civil cases is slightly longer in the Eastern District of Michigan compared to the District of Colorado), whereas the time from filing to trial is slightly less.  Conversely, while the District of Colorado has slightly fewer pending cases than the Eastern District of Michigan, it has slightly more "weighted filings." **See** United States Courts, **Federal Court Management Statistics, September 2012, District Courts**, http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-september-2012.aspx (last accessed May 29, 2013); *see also id.*, **Explanation of Selected Terms**, http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-september-2012.aspx (last accessed May 30, 2013) (explaining that the term "weighted filings" "account[s] for the different amounts of time district judges require to resolve various types of civil and criminal actions. . . . Average civil cases or criminal defendants each receive a weight of approximately 1.0; for more time-consuming cases, higher weights are assessed . . .; and cases demanding relatively little time from judges receive lower weights . . .").  Overall, therefore, this factor is a wash.

The parties do not address any of the remaining factors, and I do not find any of them relevant to my analysis of the propriety of transferring venue.

7

change of venue;

2. That this case is **TRANSFERRED** to the United States District Court for the Eastern District of Michigan (Theodore Levin United States Courthouse, 231 W. Lafayette Blvd., Room 564, Detroit, MI 48226);

3. That the Final Pretrial Conference and Trial Preparation Conference set for January 10, 2014, are **VACATED**; and

4. That the jury trial set to commence January 27, 2014, is **VACATED**.

Dated May 30, 2013, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge